Van Voorhis, J.
(dissenting). The defendant has been convicted of murder in the first degree in the killing of his sister-in-law and her nineteen-month-old child, while he was engaged in the commission of rape. The circumstances pointed particularly to his having raped this mere infant. The evidence indicates that he did the acts which have been ascribed to bim, but it also indicates a strong basis for the defense that he was legally as well as medically insane. In summation, the District Attorney *463 told the jury that regardless of whether this man was sane or insane, the only assurance that he would be kept off from the streets would result from sending him to the electric chair. The words which he used are as follows: “ Well, if you find him insane, ladies and gentlemen, you will have no assurance whatsoever that he won’t be back out again * * * when he satisfies the Commission that he is sane, as he is, that will be the end, he will be back out. No assurance whatsoever have you that they will keep him out of society. And, ladies and gentlemen, that you cannot afford to let happen.”
That the jury were impressed by this reasoning is indicated by the circumstance that after deliberating for 2 hours and 26 minutes, they returned into court and asked the following question: “If the defendant is found guilty of murder in the first degree with recommendations that he be imprisoned for life, is there any possible chance that he would ever be paroled, and could we be assured that he would be there the rest of his natural life? ”
The Trial Justice replied that there could be no assurance that he would stay in prison until he dies if he were given a life sentence. The foreman stated that there were “No further questions from the jury”, and 6 minutes later they rendered a verdict of guilty of murder in the first degree without recommending life imprisonment.
It is improbable that a jury would have given any thought to life imprisonment as punishment for such a revolting felony murder, if the defendant had been sane. Obviously the one consideration which was uppermost in their minds was to insure that he would not be turned loose upon society. They were evidently deterred from finding him insane due to fear, which the District Attorney had told them was well founded, that if they did so he would soon be at large. Yet “ not guilty by reason of insanity ’ ’ is the verdict which, under the law, the jury were to have rendered if they found that to have been the fact. Having been told by the District Attorney with all of the emphasis at his command, that even if insane they should find defendant guilty for the convincing reason that otherwise he would soon be released from confinement, the jury appear to have been striving to do justice by reaching the same result in another manner. But before recommending life imprisonment, as a substitute for a verdict of not guilty by reason of insanity, *464 they needed to be assured that defendant would not get out of prison on parole or in some other manner. They evidently thought that a man who was as dangerously insane as this defendant should not, under any circumstances, go at large. The jury were instructed in this by their native common sense, and transparently they tried to mould their verdict into such a form as would guarantee that result. Their verdict of guilty without recommendation, rendered immediately after being told by the- Trial Justice that there could be no assurance that defendant would not be released from prison, is a strong indication that they decided to dispose of this man by electrocution in order to keep him out of circulation, regardless of whether he was insane.
This court held it to be reversible error in People v. Manganaro (218 N. Y. 9, 16) for the District Attorney to tell the jury that if they found a defendant insane he would go to Matteawan to remain only for so long as his insanity lasted; and that they could not afford to find a verdict of not guilty by reason of insanity if they expected him to remain incarcerated. People v. Draper (278 App. Div. 298, affd. 303 N. Y. 653) ig to the same effect. In the recent case of People v. Oliver (1 N Y 2d 152, 166) it was said by Judge Fboessel, in a dissenting opinion, to be sure, but on a point with which the majority were not at variance: ‘ ‘ The District Attorney, again in summation, fearing the consequences of setting the defendant at large, further remarked: ‘the psychiatrists at Bellevue still believe this defendant has schizophrenia, but at the moment he is lucid * * * and if you believe that this defendant did not know the nature and quality of his act, or that it was wrong, you gentlemen will be setting out on the streets a defendant who is still suffering from schizophrenia, a defendant whom Bellevue said requires supervision.’ The obvious prejudice of these remarks in disposing the jury against finding defendant not guilty on grounds of insanity does not, we believe, require extended discussion.”
The similar statement by the District Attorney in this case should not have been made. The only difference of opinion with respect to it is whether the statement was prejudicial. It seems to me that its prejudicial effect upon the jury is demonstrated by the circumstance that their question indicated that they were considering a recommendation of life imprisonment *465 as a substitute for a verdict of not guilty by reason of insanity, and that when told that even so there could be no assurance that he would remain incarcerated, they promptly found him guilty of felony murder without recommendation.
It is the law and public policy of the State not to convict of criminality persons who are legally insane, however horrible their deeds may be. This policy of our law is based on prevailing concepts of justice to the individual, and also upon the inadvisability of filling prisons with the insane. If it is considered that persons suffering from certain kinds of criminal insanity should be put to death, that issue should be faced squarely by society. It should not be rationalized by a fiction that persons are sane who are insane. If the jury considered this defendant to have been insane when these acts were committed, which the evidence falls little short of requiring them to do, and if they were influenced in arriving at their verdict by the comment made in summation by the prosecuting officer that they should disregard, in effect, the instruction of the court concerning the verdict which they should render if they found him to be insane, it seems to me that in the interest of justice there should be a new trial.
The judgment of conviction should be reversed and a new trial granted.
Desmond, Dye, Froessel and Burke, JJ., concur with Conway, Ch. J.; Van Voorhis, J., dissents in an opinion in which Fuld, J., concurs.
Judgment of conviction affirmed.