Michael Kern, J.
The unusual circumstances brought to the court’s attention in this coram nobis proceeding furnish the predicate for the application that the plea of guilty to the crime of manslaughter in the first degree entered five and one-half years after the alleged commission of the crime of murder in the first degree, and the .sentence imposed thereon, be vacated and set aside on the ground that the petitioner was insane at the time of commission of his act.
The chronological progression of events, found in the hospital records, reports of psychiatrists, and the testimony of witnesses called to testify at the hearings held pursuant to the order of the Appellate Division, disclose that the petitioner, who had, for many years, been a professional fighter, is alleged to have shot and killed his friend, Shirley Carlston, on December 28, *293 1958, in a Fulton Street bar. After bis apprehension about three weeks later, and his indictment on February 19, 1959, for first degree murder, he was remanded to Kings 'County Hospital for mental examination. On May 22, 1959, he was certified to be then insane and ‘1 incapable of understanding the charge against him, the proceedings and to make his defense.” The report, made by Dr. Emil G-. Winkler and Dr. Pasquale L. Grallizzi, subsequently confirmed by motion made before then County Judge Barshay, contained the following diagnosis: “ Chronic brain syndrome associated with brain trauma — knockouts — deterioration—psychotic reaction— convulsive disorder ”.
Committed to Matteawan State Hospital for the Criminal Insane, immediately following confirmation of the report, the petitioner remained in that institution until January 28, 1964. The final report of Dr. W. C. Johnson, medical superintendent of that institution, was accompanied by a certificate of recovery from a mental illness diagnosed as ‘1 Psychosis with Psychopathic Personality ”.
Upon return to this court, the petitioner was rearraigned and entered a plea of not guilty with, a specification of insanity. On March 12, 1964, during discussion of a proposed disposition of the case, the Assistant District Attorney in charge called the attention of the court to the events which followed the indictment, and the petitioner himself, participating in the proceedings, stated, “ I had a seizure, your Honor, I was sick. I did not know what I did * * * I just went crazy.” Nevertheless he was permitted to plead guilty to the reduced charge of manslaughter in the first degree, pursuant to which he is now serving a term of imprisonment of from 5 to 20 years.
The instant proceeding, seeking an order setting aside and vacating the plea of guilty, and the sentence imposed thereon, is not predicated upon any claim that the petitioner, at the time of the interposition by him of the plea of guilty, and at the time of sentence, was insane or unable to comprehend the nature of the proceedings. In his pro se petition, he alleges ‘ ‘ insanity ”; “that he was mentally ill when this crime happened; that he was mentally ill during any commission of a crime ”; “ that [petitioner] wasn’t guilty of any crime because the law states that an accused person cannot lawfully be punished for an act committed by them while in a state of insanity. ’ ’ The petition was denied without a hearing and, upon reargument, again, denied. An appeal taken to the Appellate Division resulted on May 8, 1967 [28 A D 2d 544] in a reversal of the order, the matter being remanded to this court for a hearing * ‘ limited *294 to the merits of defendant’s claim that he was mentally incapable of understanding the nature of the crime at the time of its commission ”, on the authority of People v. Boundy (10 N Y 2d 518); People v. Buchanan (17 A D 2d 903); People v. Brown (13 N Y 2d 201); People v. Cooper (24 A D 2d 874); and People v. Koehl (23 A D 2d 690).
Although there is a complete lack of definitive findings, based upon any examination or investigation made as to the claimed incompetency of the petitioner on the date of the commission of the crime charged, there is a close affinity between that specific question and the findings and conclusions reached by the physicians at Kings County Hospital and at Mattewan State Hospital, who did, in fact, personally examine and interview the petitioner during the period of five months between the date of the act complained of and the finding of insanity. Dr. Max Helfand and Dr. John A. Bianchi, eminent psychiatrists, who had earlier been designated by Justice Babshay and Justice Damiant, called as witnesses at the hearings, testified that they had examined all pertinent records made during the year 1959 by the psychiatrists at Kings County Hospital — in close proximity in point of time to the date of the commission of the crime — and the records maintained at Mattewan State Hospital for the Criminal Insane during the petitioner’s confinement there, and that Dr. Helfand had personally examined the petitioner during the pendency of the instant proceedings — a point in time far removed from the date of the commission of the crime charged. They testified that Drs. Winkler and Grallizzi may have been correct, although they did not agree with their findings and conclusions; that if the diagnosis arrived at by Drs. Winkler and Grallizzi was sound, the same mental condition referred to by them as “ chronic brain syndrome associated with brain trauma — knockouts — deterioration — psychotic reaction —convulsive disorder ” — would have existed four months earlier when the act was perpetrated. Dr. Helfand admitted that the mental deterioration found by Drs. Winkler and Grallizzi could have “ occurred from frequent and recurring blows to the head of a boxer ” like the defendant but he insisted that they could not have been found to have existed in this case. This, notwithstanding his clinical disadvantage in the limited opportunity for the examination made by him nine years after December 28, 1958, as against the effective opportunities afforded Drs. Winkler and Grallizzi during the period within three or four months thereafter. Admitting that there might, indeed, have been residual signs of cerebral damage or post- *295 traumatic encephalopathy resulting from blows to the head, he concluded, in answer to a question put to him by the court, that there was ‘ ‘ an arguable or substantial question which might very well have been presented to a court and jury,” as to whether or not the petitioner was .sane or insane at the time of the commission of his act.
In view of the testimony of Drs. Helfand and Bianchi that the basic findings of Drs. Winkler and Gallizzi, if warranted, would indicate progressive deterioration, it must be concluded, as did indeed Drs. Helfand and Bianchi, that the conditions found at the examinations held by them were present on December 28, 1958 and prior thereto.
In People v. Draper (278 App. Div. 298, 303, affd. 303 N. Y. 653), it was held that proof of insanity following commission of a crime is relevant upon the issue of insanity at the time of the commission of the crime. Exclusion by the trial court, in that case, of hospital records and observations of the defendant during a period of about six weeks after the commission of the crime charged, was held to be error: ‘ ‘ The day to day account of the actions and reactions of the defendant as kept by the hospital was very relevant and important as bearing upon defendant’s sanity or insanity at the time of the commission of the crime.”
In People v. Roth (13 A D 2d 295 [1961]), which involved the question of statutory interdiction against receipt into evidence of psychiatrists ’ reports at a trial and its waiver by the defendant, the court cited Weihofen, Mental Disorder, as a Criminal Defense (p. 323), and 2 Wigmore, Evidence ([3d ed.], § 233), and People v. Hoch (150 N. Y. 291), and quoted from Weihofen as follows (p. 301): ‘ ‘ Since mental disorder is not a thing of the moment, but usually requires more or less time to develop, it is competent, in order to prove the defendant’s responsibility or irresponsibility at the time of the crime to introduce evidence of his mental condition before and after that time.”
The merits of the petitioner’s claim that he was mentally incapable of understanding the nature of the crime at the time of its commission, called into question by the reports of Drs. Winkler and Gallizzi, are to be considered in the light of the concept that, generally, whether one was, at the time of the commission of a crime (under the former Penal Law) unable to understand the nature and quality of the act and that it was wrong, is for a jury to determine (People v. Horton, 308 N. Y. 1, 12; People v. Kelly, 302 N. Y. 512; People v. Farmer, 194 N. Y. 251, 265; People v. Silverman, 181 N. Y. 235). This subject, with particular reference to the defendant’s mental condi *296 tion on December 28, 1958, has never been explored. However, when the petitioner upon his rearraignment in January, 1964, interposed a plea of not guilty with a specification of insanity pursuant to section 336 of the Code of Criminal Procedure, such a plea at once put the prosecution on notice that the defendant intended to rely upon the defense of mental incapacity under section 1120 of the Penal Law. Moreover, when the prosecution recommended and the court accepted the reduced plea of manslaughter in the first degree, there was before the court an abundance of expert opinion tending, at least, to substantiate the petitioner’s then expressed contention that he was mentally incompetent at the time of the commission of the crime. Cognizance should have been taken of the fact that the petitioner persisted in urging it. Albeit the District Attorney, in recommending the acceptance of the reduced plea, gave benign recognition to the earlier reports of Drs. Winkler and G-allizzi, the proffered plea should not have been accepted. The fullest protection should have been accorded the defendant at the time he entered the plea of guilty (Von Moltke v. Gillies, 332 U. S. 708, 722-723).
A comprehensive and painstaking inquiry would have contributed much to a broad understanding of the interplay of the circumstances surrounding the act, the findings and conclusions of Drs. Winkler and Gallizzi, the final report of Dr. Johnson of Mattewan State Hospital and the statements made by both the petitioner and the District Attorney when the plea was offered and accepted, all tending to reflect strongly on the claim of insanity at the time of the commission of the act. All must have pointed unerringly to the substantial merit of the defendant’s claim of insanity which, if not glaringly exposed, appeared just below the surface of the declarations then made (cf. People v. Gonzalez, 20 N Y 2d 289).
Upon all of the foregoing, it is the opinion of the court that the plea entered by the petitioner should be set aside and the sentence imposed thereon by the court on the 27th day of May, 1964, be vacated.