■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD J. CLARK, Appellant. — Appeal from a judgment of the County Court of Broome County (Coutant, J.), rendered June 5, 1981, upon a verdict convicting defendant of the crimes of burglary in the first degree, attempted rape in the first degree, sexual abuse in the first degree, and criminal possession of a weapon in the second degree. Defendant's indictment and convictions stem from an incident which occurred during the early morning hours of July 26, 1979. Defendant

drove to the trailer occupied by Gail Farthing and Lynette Wolf, employed a pretext to get Farthing partly to open the door and then pushed his way in while brandishing a handgun. He maneuvered both women into the bedroom of the trailer and shoved Wolf into a closet. He then forced the other woman onto the bed, undressed her, kissed her and placed his fingers in her vagina. It was at this point that the gun fell to the floor. Farthing yelled to Wolf that the gun was not loaded, and Wolf ran from the closet. A scuffle ensued in which the gun was discharged, after which defendant fled in his car. He was picked up the next day by the police at his sister's residence and gave information as to where he had hidden the gun on her premises. The foregoing facts were not seriously disputed, and they were amply sufficient to establish, by both direct and circumstantial evidence, all of the elements of the crimes, including attempted rape in the first degree (*People v Green,* 80 AD2d 995, 996; *People v Leary,* 64 AD2d 825) and, a fortiori, burglary in the first degree. The major points raised on appeal concern various rulings made by County Court during the trial pertaining to defendant's principal defense that he was not criminally responsible for his actions because of mental illness (Penal Law, § 30.05). Specifically, defendant objects to the introduction into evidence of information concerning his uncharged prior violent acts and of opinion testimony from a deputy sheriff that it was not uncommon for prisoners in the Broome County Jail to fake suicide attempts. Examined in the light of the defense strategy and tactics in establishing insanity, the rulings on the prosecution's rebuttal evidence do not require reversal. At an earlier stage of the proceeding, defendant had been found incompetent to stand trial upon the examination and report of two psychiatrists. Nevertheless, for reasons not appearing in the record, no psychiatric expert testimony was introduced at the trial to establish defendant's insanity at the time of the commission of the crimes. Defendant also failed to avail himself of the right to introduce evidence, through duly qualified hospital records, of defendant's mental state during any prior admissions to hospital facilities for the mentally ill (see *People v Kohlmeyer,* 284 NY 366; *People v Draper,* 278 App Div 298, 303, affd 303 NY 653). Instead, defendant sought to prove insanity through the cross-examination of a prosecution witness, the investigating deputy sheriff, and through two defense witnesses, defendant's sisters. These witnesses were asked questions concerning defendant's mental condition both before and after commission of the crimes for which he was on trial. It is by now settled that expert psychiatric testimony is not necessarily required to establish an insanity defense and that nonpsychiatric testimony is admissible for that purpose (*Matter of Lee v County Ct. of Erie County,* 27 NY2d 432, 442, cert den 404 US 823). Lay witnesses, however, are restricted to testifying regarding observed behavior of the defendant and whether or not that behavior impressed such witnesses as being rational or irrational (*People v Kohlmeyer,* 284 NY 366, 369, *supra; People v Pekarz,* 185 NY 470, 481). Here, however, the defense elicited testimony from the lay witnesses which went substantially beyond the permissible scope of nonpsychiatric evidence to establish an insanity defense. For example, essentially hearsay evidence was educed that, while in jail pending trial, defendant was taken to hospitals "for the criminally insane"; that in 1978 defendant was admitted to such a hospital and absconded; that "his doctor labelled him as schizophrenic"; that he had in the past engaged in numerous suicide attempts; and that he had undergone a series of hospitalizations for mental illness because of episodes of extreme irrational behavior, all of which occurred after he had been severely injured in a motorcycle accident in 1974. It was in this context that the prosecution attempted to counter the foregoing evidence by showing that defendant's prior or subsequent irrational behavior was not

genuine but was feigned in order to avoid punishment for his acts. Thus, the prosecution tried to show that many of his hospitalizations were the result of his having voluntarily admitted himself after he was arrested or following the issuance of an out-of-State (Georgia) arrest warrant, and that an alleged suicide attempt in the jail while awaiting trial and the resultant hospitalization therefor followed immediately after defendant's case was set down for trial. Testimony was also elicited that defendant's violent tendencies were manifested well before the 1974 motorcycle accident, in order to demonstrate that his violent acts were unrelated to the mental deterioration his sisters claimed had ensued following the accident. The foregoing uses of defendant's prior acts to disprove his insanity defense were generally consistent with the principles for such use set forth in *People v Santarelli* (49 NY2d 241) and *People v Ventimiglia* (52 NY2d 350). The District Attorney was not limited to proving a single integrated theory of "sanity" in rebutting defendant's evidence of insanity; nor was he attempting to use rebuttal as an opportunity to lay bare defendant's entire history of antisocial behavior (*People v Santarelli*, 49 NY2d 241, 249, n 2; 250, n 3, *supra*). Each reference to defendant's prior conduct was directly probative to disprove or explain the evidentiary points developed by the defense. The prosecution exercised restraint in referring to prior acts in order to minimize any possibly prejudicial impact therefrom. Thus, in referring to the Georgia arrest warrant claimed to have motivated one of defendant's hospitalizations, no mention was made that the warrant was based on a murder charge. Additionally, in weighing probative value as against possible prejudicial effect, a factor favoring admissibility here is that all references to defendant's prior conduct were in the form of rebuttal of evidence introduced by the defense, rather than in the prosecution's case in chief (see *People v Ventimiglia*, 52 NY2d 350, 360, *supra*). Finally on this issue, we note that, except for the reference to the Georgia arrest warrant, no timely or adequate objection was interposed by the defense to the prosecution's rebuttal evidence. Therefore, the error, if any, in admitting such evidence was not preserved for review on appeal (CPL 470.05, subd 2; *People v Campbell*, 86 AD2d 403, 406). In view of the dubious admissibility of the defense evidence which "opened the door" to the prosecution's evidence now complained of, we decline to reverse in the interests of justice (CPL 470.15, subds 3, 6, par [a]). For the same reason, we do not choose to disturb defendant's conviction because the jury was not given limiting instructions on its use of his prior conduct, absent an exception or request to charge. Defendant's remaining assignments of error do not require extended comment. County Court correctly excluded as hearsay the Sheriff's department report of an incident involving defendant while he was in the jail. Merely establishing that the officer in charge of the jail who signed the report had a duty to record the incident was insufficient to qualify the report under the business record exception to the hearsay rule. It was also incumbent upon defendant to establish that the unidentified deputy sheriff who filed the report with the officer in charge was under a similar business duty to report and record the incident (see *Matter of Leon RR*, 48 NY2d 117, 122). In failing to move to suppress before trial, defendant waived any objections regarding the admissibility of his statement to his brother concerning the location of the gun on his sister's premises or any challenge to the seizure of the gun in a search to which his sister had consented (CPL 710.70, subd 3; *People v Blim*, 61 AD2d 876, affd 46 NY2d 934). Finally, defendant has failed to demonstrate that he was denied effective assistance of counsel. The record read in its totality suggests that counsel vigorously employed the limited tools at his disposal to defend the case. There is nothing in the record to indicate that omissions seen in hindsight were attributable to anything but the lack of supportive evidence, or to tactical decisions. Defen-

dant clearly was afforded meaningful representation (*People v Baldi*, 54 NY2d 137, 146-147). For the foregoing reasons, defendant's conviction should be upheld in all respects. Judgment affirmed. Mahoney, P. J., Sweeney, Kane, Mikoll and Levine, JJ., concur.