■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EFIM RYKLIN, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Greenberg, J.), rendered April 18, 1988, convicting him of criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed, and the matter is remitted to the Supreme Court, Kings County, for further proceedings pursuant to CPL 460.50 (5).

The charge of which the defendant stands convicted arose from a 1985 incident during which the defendant, having become enraged after being presented with an order of protection by his wife, barricaded himself and his nine-month-old daughter in the marital residence. The defendant rejected the requests of law enforcement officials that he peaceably surrender himself, threatening to kill himself and his child while displaying a knife. The defendant released the infant, shortly thereafter, but refused to surrender himself. When the police subsequently rushed into the apartment through the front door, which they opened with a key provided by the defendant's wife, they were met by the defendant, who displayed a .32 caliber revolver. The defendant surrendered himself and his weapon to the police after the seven-hour ordeal.

At the trial, the defendant presented an insanity defense (Penal Law § 40.15), calling two psychiatrists to testify on his behalf. Both doctors opined that as a result of severely stressful circumstances to which he had been subjected since his emigration from the Soviet Union in 1975, the defendant suffered from posttraumatic stress syndrome. Dr. Leon Shtern, the defendant's treating psychiatrist, testified that his patient had been suffering from this mental disorder since August 1981. He explained that the defendant's conduct on the date in question was triggered by the police coming to remove him from his home and to take away his child. The doctor theorized that the defendant perceived any "force or forceful act * * * [as] * * * a violation of his privacy" which "provoked a tremendous confusion, and anger and fear and a sense of helplessness and distortion of reality at that particular point". On cross-examination, Dr. Shtern opined that the defendant would likely react to similarly stressful events in the same

manner, whereupon, over defense objection, the People were permitted to inquire of the expert whether the defendant would have been expected to behave as he did upon his arrest one year before the incident in question for possession of a gun.

Dr. Daniel Schwartz, an expert in forensic psychiatry, rendered the opinion that as a result of the mental disease, the defendant lacked substantial capacity to appreciate the wrongfulness of what he was doing. Once again, over the defendant's objection, the prosecutor was permitted to inquire of the expert regarding the defendant's prior weapons possession conviction, focusing on the seeming inconsistency between the defendant's having pleaded guilty to such a charge only one year prior to the incident in question and his alleged inability to appreciate the wrongfulness of the conduct at issue.

In rebuttal, the People offered the testimony of Dr. Robert Berger, an expert in forensic psychiatry, who, after interviewing the defendant, diagnosed him as suffering from an adjustment disorder. The doctor opined that the defendant was able to appreciate and knew that his conduct which was the subject of the pending charges was wrong. In rendering his assessment of the defendant, Dr. Berger considered the defendant's personality traits, describing him as "an individual who does not take responsibility for his own behavior and actions, but rather blames others for his own faults and failures". The prosecution was then permitted to question its witness as to the impact of the defendant's prior conviction of leaving the scene of an accident on his evaluation of the defendant. Dr. Berger explained that: "[i]t is consistent with my formulation of his personality style * * * [It] is only one example of the pattern of a behavior on the part of the defendant in which he feels his own personal needs warrant, or are more important than following the rules and regulations that have been set up by society and the law".

On appeal, the defendant asserts that the prosecutor was improperly permitted to question the three expert psychiatric witnesses regarding his prior convictions. We disagree. The general rule is that evidence of a defendant's prior criminal conduct may not be admitted at the People's behest if its only purpose is to establish the accused's propensity to engage in criminal activities (People v Fiore, 34 NY2d 81, 84; People v Molineux, 168 NY 264). Where, however, the evidence has a bearing upon a material aspect of the People's case other than the accused's general propensity toward criminality, the probative value of the evidence may justify its admission, the

potential for incidental prejudice notwithstanding *(People v Allweiss,* 48 NY2d 40; *People v Vails,* 43 NY2d 364).

Other crimes evidence is of particular relevance in cases where a defendant interposes an insanity defense. As the Court of Appeals declared in *People v Santarelli* (49 NY2d 241, 248): "evidence of uncharged criminal or immoral conduct may be admitted as part of the People's case on rebuttal if it has a tendency to disprove the defendant's claim that he was legally insane at the time of the crime" since, when a defendant interposes the insanity defense, he necessarily puts in issue some aspects of his character and personal history.

The evidence adduced by the prosecution was properly admitted since it tended to disprove the defendant's claim that he was legally insane at the time of the crime. Specifically, the line of inquiry regarding the defendant's prior gun possession conviction was probative on the issues of the validity of Dr. Shtern's diagnosis of posttraumatic stress syndrome, inasmuch as the "triggering force" of the incident in question would appear to have arisen and prompted a like reaction under similar circumstances surrounding the defendant's prior arrest and the defendant's ability to appreciate the wrongfulness of his conduct in view of his having pleaded guilty to a similar crime only one year earlier. Moreover, since Dr. Berger viewed the defendant as concerned primarily with self-preservation, toward which goal he would utilize almost any means, the defendant's prior conviction for leaving the scene of an accident was relevant for the jury's assessment of both the doctor's characterization of the defendant and his opinion that the defendant knew precisely what he was doing at the time of the incident. Simply put, "[h]aving placed his mental state before the trier of fact, the defendant cannot complain [that] the People [brought] forth additional evidence bearing upon that issue" *(People v Santarelli, supra,* at 249; *see, People v Ciervo,* 123 AD2d 393, 396; *People v Gantz,* 104 AD2d 692, 693; *People v Clark,* 94 AD2d 846) where its probative value outweighs the potential for prejudice. We further observe that the jury was instructed on two separate occasions as to the limited purpose for which the evidence was received *(see, People v Williams,* 50 NY2d 996, 998; 1 CJI[NY] 12.20, at 708-709).

Similarly unavailing is the defendant's claim that the trial court erroneously denied his request for a missing witness charge as to his wife's failure to testify. The defendant failed to sustain his initial burden of demonstrating that his wife was knowledgeable on matters material and relevant to the

prosecution of a weapons possession case (see, People v Gonzalez, 68 NY2d 424, 428-429), since it was the police officers and not Mrs. Ryklin who witnessed the defendant in possession of the gun. Furthermore, we note that Mrs. Ryklin was not under the control of law enforcement officials.

We have examined the defendant's remaining contentions and find them to be either unpreserved for our review or without merit. Mollen, P. J., Kunzeman, Spatt and Rosenblatt, JJ., concur.