■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRYANT ROSEBORO, Appellant. [6 NYS3d 629]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Reichbach, J.), rendered July 7, 2011, convicting him of manslaughter in the first degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.

Ordered that the judgment is affirmed.

The defendant was charged with murder in the second degree and related charges based on allegations that he shot six bullets at the victim, in the defendant's apartment, in the presence of the defendant's roommate and the roommate's girlfriend. While the girlfriend testified at trial, the roommate did not. The defendant was acquitted of the murder charge but convicted of manslaughter in the first degree and criminal possession of a weapon in the second degree.

The defendant requested a missing witness charge against the People for the People's failure to produce the defendant's roommate, who had observed the shooting and had spoken with the police at the investigatory stage of the case. The court denied the charge on the ground that the witness was not under the People's control.

A missing witness charge is warranted for a party's failure to produce a witness, under its control, where his or her testimony would have been material and noncumulative of other testimony or evidence (*see People v Edwards*, 14 NY3d 733, 735 [2010]). A defendant seeking the charge has "the initial burden

of proving that [the missing witness] was under the control of the People and that his testimony would be relevant, noncumulative and beneficial to them" (*People v Townsley*, 240 AD2d 955, 958 [1997] [internal quotation marks omitted]; *see also People v Vanhoesen*, 31 AD3d 805, 809 [2006]; *People v Drayton*, 24 AD3d 686 [2005]; *Buttice v Dyer*, 1 AD3d 552, 553 [2003]; *People v Williams*, 283 AD2d 944 [2001]; *People v Williams*, 256 AD2d 1110, 1111 [1998]; *People v Swinton*, 200 AD2d 892, 894 [1994]; *People v Hicks*, 154 AD2d 713, 714 [1989]; *People v Ryklin*, 150 AD2d 509, 511 [1989]). The element of control, for missing witness purposes, does not concern physical availability, but instead concerns the relationship between the witness and the parties (*see People v Savinon*, 100 NY2d 192, 200 [2003]; *People v Gonzalez*, 68 NY2d 424, 429 [1986]).

Here, the Supreme Court providently exercised its discretion in denying the missing witness charge (*see People v Savinon*, 100 NY2d at 197; *People v Otigho*, 113 AD3d 637 [2014]; *see also People v Macana*, 84 NY2d 173, 179-180 [1994]). The defendant failed to meet his initial burden of establishing that the roommate was under the People's control. Contrary to the defendant's contention, the roommate was not under the People's control at the time of trial by virtue of having provided a statement to the police during the initial investigation stage of the case. In addition, control cannot be found from the People's placement of the roommate on their witness list, as their wish for his testimony is not indicia of having control over him. There was no material witness order. Indeed, the record contains no evidence that the People's relationship with the defendant's roommate gave them any more control over him at trial than the defendant may have had himself.

Contrary to the defendant's contention, raised in his pro se supplemental brief, the Supreme Court properly denied that branch of his omnibus motion which was to suppress his statements to law enforcement officials. A review of the totality of the circumstances (*see People v Mateo*, 2 NY3d 383, 413 [2004]; *People v Anderson*, 42 NY2d 35, 38 [1977]) demonstrates that the defendant's statements to the police, which were given after he was informed of, and waived, his *Miranda* rights (*see Miranda v Arizona*, 384 US 436 [1966]), were voluntarily made (*see* CPL 60.45 [2] [a], [b] [i]; *People v Mateo*, 2 NY3d at 414; *People v Huntley*, 15 NY2d 72 [1965]).

The defendant's challenge, made in his pro se supplemental brief, to certain remarks made by the prosecutor during summation, is unpreserved for appellate review (*see* CPL 470.05 [2]). In any event, the challenged remarks were proper because

they were within the broad bounds of rhetorical comment permissible in closing arguments, and constituted a fair response to arguments made by defense counsel in summation (*see People v Halm*, 81 NY2d 819, 821 [1993]; *People v Molinaro*, 62 AD3d 724, 724-725 [2009]; *People v Holguin*, 284 AD2d 343 [2001]; *People v Stokes*, 282 AD2d 553, 554 [2001]; *People v Alexandria*, 126 AD2d 655 [1987]).

Under the circumstances of this case, the sentence imposed upon the defendant's conviction of manslaughter in the first degree was not excessive (*see generally People v Suitte*, 90 AD2d 80 [1982]). Dillon, J.P., Dickerson and Cohen, JJ., concur.

Barros, J., concurs and votes to affirm the judgment, with the following memorandum: While I agree that the judgment of conviction must be affirmed, I disagree with the majority's conclusion that the defendant did not meet his initial burden in establishing his entitlement to a missing witness charge. The Supreme Court should have given the missing witness charge, but the error in failing to do so was harmless.

"The party seeking the missing witness charge must sustain an initial burden of showing that the opposing party has failed to call a witness who could be expected to have knowledge regarding a material issue in the case and to provide testimony favorable to the opposing party" (*People v Edwards*, 14 NY3d 733, 735 [2010] [brackets omitted]; *see People v Macana,* 84 NY2d 173, 177 [1994]). The Court of Appeals has cautioned that courts should not place too onerous a burden on a party requesting the missing witness charge, since such party "can hardly know what that witness knows or what the witness would say if called" (*People v Kitching*, 78 NY2d 532, 537 [1991]).

As an eyewitness to the shooting, the defendant's roommate could certainly be expected to have knowledge regarding material issues in the case. In addition to being the defendant's roommate, he was a friend of the victim. Indeed, on multiple occasions, the roommate invited the victim to the apartment that he shared with the defendant, resulting in a lock being installed between the defendant's bedroom and the roommate's bedroom. Based upon his relationship with the victim and the defendant, and his knowledge of the events leading up to the shooting, it could be expected that the roommate would offer testimony as to, among other things, the defendant's motive and the defendant's justification defense. Clearly, the roommate was a key witness whose expected testimony would be material and noncumulative (*see People v Savinon*, 100 NY2d 192, 197 [2003]).

Moreover, the roommate could be expected to give favorable testimony to the People. He immediately reported the shooting to the police. The roommate's girlfriend, who was called by the People as a witness, testified that she and the roommate were together at the precinct when she gave a recorded statement to the police, and a detective testified that he interviewed the roommate.

Contrary to the majority's determination, the placement of the roommate on the People's witness list is a very strong indicator that the People intended to call him as a witness, and, consequently, that the People expected that the roommate would provide favorable testimony. The witness list was exchanged just prior to the trial and was, presumably, relied upon by the defendant and the court for, among other things, scheduling and preparing for trial. It was not merely the prosecutor's "wish" list.

"Once the party seeking the charge has established prima facie that an uncalled witness is knowledgeable about a pending material issue and that such witness would be expected to testify favorably to the opposing party, it becomes incumbent upon the opposing party, in order to defeat the request to charge, to account for the witness' absence or otherwise demonstrate that the charge would not be appropriate" (*People v Gonzalez*, 68 NY2d 424, 428 [1986]). Here, the People failed to make any showing. Accordingly, the Supreme Court improvidently denied the request to give the missing witness charge.

Even so, the error was harmless since the defendant was given ample latitude to comment on the People's failure to produce the witness, the defendant was acquitted of the murder charge, the evidence of the defendant's guilt on the charges of manslaughter in the first degree and criminal possession of a weapon in the second degree was overwhelming, and there is no significant probability that a properly instructed jury would have acquitted the defendant of the charges of manslaughter in the first degree and criminal possession of a weapon in the second degree (*see People v Hall*, 18 NY3d 122, 132 [2011]; *People v Crimmins*, 36 NY2d 230, 242 [1975]; *cf. People v Vasquez*, 76 NY2d 722, 725 [1990]).