People v Smith (2025 NY Slip Op 07082)

People v Smith

2025 NY Slip Op 07082

Decided on December 18, 2025

Court of Appeals

Troutman

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 18, 2025

No. 117 

[*1]The People & c., Respondent,
vMark A. Smith, Appellant.

Stephanie M. Stare, for appellant. 
Amy N. Walendziak, for respondent. 

TROUTMAN, J.

Penal Law § 160.15 (4) imposes criminal liability for first-degree robbery on a person who forcibly steals property and, in the course of the crime or immediate flight therefrom, "[d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." Penal Law § 160.10 (2) (b) imposes criminal liability for second-degree robbery on a person who commits that same conduct. However, "it is an affirmative defense" to the first-degree charge where the object displayed "was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged" (Penal Law § 160.15 [4]). Here, we hold that County Court properly denied defendant's request to charge the jury on that affirmative defense.
In 2017, a man in a black mask entered a Rochester hair salon and demanded money. An employee testified that, as she retrieved cash from a safe, the man held to her head a black object that appeared to be a gun. Two customers also testified that the object appeared to be a gun, although one of those customers, [*2]who had a concealed carry permit, could not determine if the object was a "play gun" or a "Glock nine millimeter." Once the man received the cash, he fled. The police later developed defendant as a suspect based on a Crime Stopper report by an acquaintance to whom defendant had confessed. The acquaintance had bought defendant a BB gun for his birthday. The police executed a search warrant at defendant's home and recovered a black CO2 air pistol and a homemade black mask. Upon his arrest, defendant told the police that they "didn't have any evidence." Once informed of the search warrant, however, defendant said: "I'm f——d now. They probably found the BB gun in my house."
Defendant was charged with robbery in the first degree on the ground that he forcibly stole property and, in the course of the crime, displayed an object appearing to be a firearm (see Penal Law § 160.15 [4]). The case proceeded to trial.
At the charge conference, defendant requested that the jury be charged with the affirmative defense to robbery in the first degree, arguing that the BB gun was not a "loaded weapon from which a shot readily capable of producing death or serious injury, could be discharged." The People responded that defendant had not presented sufficient evidence to avail himself of the affirmative defense. Defendant argued that a BB gun is not "a weapon that can actually shoot you dead." The court replied: "[I]t's a CO2 BB pistol, it's a little different. We are speculating either way." The court denied defendant's request.
The Appellate Division affirmed the judgment of conviction (228 AD3d 1324 [4th Dept 2024]), citing People v Akinlawon (158 AD3d 1245 [4th Dept 2018], lv denied 31 NY3d 1114 [2018]), where the Fourth Department relied on First and Third Department precedent in concluding as a matter of law that "a BB gun is readily capable of causing serious physical injury," and thus the affirmative defense applies "only when it is demonstrated by a preponderance of the evidence that the [BB] gun was unloaded or inoperable" (id. at 1247 [emphasis removed]; see People v Richard, 30 AD3d 750, 753 [3d Dept 2006], lv denied 7 NY3d 869 [2006]; People v Padua, 297 AD2d 536, 539 [1st Dept 2002], lv denied 99 NY2d 562 [2002]). We affirm, albeit for different reasons. Contrary to defendant's contention, the court properly denied his request to charge the jury on the affirmative defense. "When a defense declared by statute to be an 'affirmative defense' is raised at a trial, the defendant has the burden of establishing such defense by a preponderance of the evidence" (Penal Law § 25.00 [2]). The court must charge the affirmative defense to robbery in the first degree when, viewing the evidence in the light most favorable to the defendant, there is "sufficient evidence for the jury to find by a preponderance of the evidence that the elements of the defense are satisfied, i.e., that the object displayed was not a loaded weapon [readily] capable of producing death or other serious physical injury" (People v Gilliard, 72 NY2d 877, 878 [1988]; see Penal Law § 160.15 [4]). BB guns are capable of producing injury, including but not limited to protracted impairment of vision (see Richard, 30 AD3d at 753 ["The BB gun was a loaded weapon which discharged a shot that was readily capable of producing serious physical injury"]; United States v Shelton, 82 F4th 1294, 1295-1296 [8th Cir 2023] ["BB guns can cause 'protracted impairment of a function of a bodily member' such as by blinding"]), which qualifies as serious physical injury (see People v Reyes, 189 AD3d 454, 455 [1st Dept 2020], lv denied 36 NY3d 1100 [2021]; People v Hirschhorn, 231 AD2d 591, 591 [2d Dept 1996], lv denied 88 NY2d 1068 [1996]; see also Penal Law § 10.00 [10]).[FN1] Whether a particular BB gun is "readily capable" of doing so is not a question that we can decide as a matter of law (see People v Hall, 18 NY3d 122, 128-129 [2011]).
Here, although defendant made a prima facie showing that the object he displayed during the robbery was a BB gun that the police recovered from his home, he presented no evidence concerning the capabilities of that particular gun. Given the absence of such evidence, "the members of the jury could do no more than [*3]speculate that defendant's gun was not [readily] capable of causing death or other serious physical injury, and thus the
court properly denied defendant's request to submit the issue to them" (People v Cotarelo, 71 NY2d 941, 942-943 [1988]; cf. Hall, 122 NY3d at 128-129 [affirming the reversal of a judgment convicting the defendant of first-degree robbery under Penal Law § 160.15 (3) because there was no witness called to explain the capabilities of a stun gun, requiring the jury to engage in impermissible speculation]).
Defendant's reliance on equivocal dicta in People v Howard (22 NY3d 388 [2013]), where we held that defense counsel was not ineffective for failing to seek dismissal of a first-degree robbery charge (see id. at 400-401), is misplaced.
Contrary to the dissent, nothing in the language or structure of Penal Law § 160.15 (4) suggest that it "must be read to apply only . . . when the item displayed, which appeared to be a firearm, is not recovered or otherwise known" (dissenting op at 6-7). The dissent goes to great lengths to find a difference between Penal Law §§ 160.15 (4) and 160.10 (2) (b), when the difference between the two sections is self-evident: there is an affirmative defense to the first-degree charge. The dissent's conclusion is, moreover, incompatible with People v Lopez (73 NY2d 214 [1989]), in which we upheld a first-degree robbery conviction where the victim testified that "as the defendant announced the robbery he put his hand in the right side of his vest 'as if he had a gun' " (id. at 218).[FN2] The decisions of Appellate Division, Second Department, relied on by the dissent predate Lopez (see People v Bowman, 133 AD2d 701 [2d Dept 1987], lv denied 70 NY2d 953 [1988]; People v Jones, 54 AD2d 740 [2nd Dept 1976]), with the exception of People v Layton (302 AD2d 408 [2d Dept 2003]), which is based on a misreading of the affirmative defense as having been satisfied by evidence that the weapon used in that robbery "was not a firearm" (id.). Rather, the affirmative defense requires proof that the object displayed "was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged" (Penal Law § 160.15 [4]). The text of the statute is clear, and we are bound to give effect to its plain language (see People v Galindo, 38 NY3d 199, 203 [2022]). The concerns identified in the dissent are properly left to the legislature (see People v Talluto, 39 NY3d 306, 314 [2022] ["(I)f the wording of the statute has created an unintended consequence, . . . it is the prerogative of the legislature, not this Court, to correct it" (internal quotation marks omitted)]) and to the prudent exercise of prosecutorial discretion (see People v Eboli, 34 NY2d 281, 287 [1974] ["(W)e have consistently held that overlapping in criminal statutes, and the opportunity for prosecutorial choice they represent, is no bar to prosecution"]).
The remaining contentions in defendant's main and pro se supplemental briefs do not require reversal.
Accordingly, the order of the Appellate Division should be affirmed.

WILSON, Chief Judge (dissenting):

When it is uncontroverted that a defendant used a BB gun to commit a robbery, and there is no proof that the BB gun is a deadly weapon or dangerous instrument as defined in the Penal Law, a defendant can be charged with robbery in the second degree (Penal Law
§ 160.10 [2] [b]), not first-degree robbery under subdivision four (Penal Law § 160.15 [4]). If the People choose to charge robbery in the first degree, they must do so under subdivision one, two or three, and prove that the BB gun in use caused, or was capable of causing, death or serious physical injury (Penal Law § 160.15 [1]-[3]). The majority incorrectly holds that the People may obtain a conviction for first-degree robbery under subdivision four, unless the defendant proves that the particular BB gun at issue was not readily capable of producing death or serious injury. But analyzing the statutory scheme for robbery in its entirety reveals that the majority's reading of Penal Law § 160.15 (4) is unsupportable and not what the Legislature intended. Accordingly, I would remit for reduction to second-degree robbery and resentencing.I.
In People v Howard, we stated: "If the People had put forth no evidence of a gun other than the BB gun, it might be difficult to justify counsel's failure to move to dismiss the first-degree [robbery] count" (22 NY3d 388, 401 [2013]). Although not a holding, our language expressed the proper construction of New York's robbery statute—a construction the majority now abandons. Howard strongly suggests that we might have deemed counsel ineffective for the single error of failing to move to dismiss a first-degree robbery count when it is known that a BB gun, not a firearm, was used. Consistently with Howard, a long line of Appellate Division cases from the Second Department has held that a defendant who uses a BB gun and is charged under subdivision four cannot be convicted for first-degree robbery, but only second-degree (see e.g. People v Jones, 54 AD2d 740 [2nd Dept 1976] [reversing conviction for robbery in first degree, based on proof the gun displayed was an air pistol, which might be a deadly weapon but is not a firearm]; People v Bowman, 133 AD2d 701 [2d Dept 1987] ["The defendant contends, and the People concede, that the defendant's plea of guilty to robbery in the first degree . . . was inappropriate in that the gun displayed by the defendant during the robbery was a 'beebee gun' "]; People v Layton, 302 AD2d 408 [2d Dept 2003] ["The defendant correctly contends that he established his affirmative defense that the gun used in the robbery was a BB gun and thus was not a firearm"]). The majority's contrary reading results in an incomprehensible statutory scheme and shifts the People's burden of proof onto the defendant.II.
To understand the proper interpretation of Penal Law § 160.15 (4), the first-degree robbery prong under which Mr. Smith was charged, it is vital to consider the subdivision's place in the statutory scheme, rather than in isolation as the majority does (see Friedman v Connecticut Gen. Life Ins. Co., 9 NY3d 105, 115 [2007] ["A court must consider a statute as a whole, reading and construing all parts of an act together to determine legislative intent, and, where possible, should 'harmonize all parts of a statute with each other and give effect and meaning to the entire statute' "] [internal citations omitted]).
Under Penal Law § 160.10 (2) (b), second-degree robbery applies when a robbery was committed with something that "appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm," which could include a BB gun (Penal Law § 160.10 [2] [b]). [FN1],[FN2] What elevates second-degree robbery to first-degree is that "in the course of the commission of the crime or of immediate flight therefrom" the defendant also commits one of four aggravating factors (Penal Law § 160.15). Subdivision one of first-degree robbery, requires the People prove the defendant "[c]ause[d] serious physical injury to any person who is not a participant in the crime" (Penal Law § 160.15 [1]).
First-degree robbery subdivision two requires the People prove a defendant was "armed with a deadly weapon," which is defined as a "loaded weapon from which a shot, readily capable of producing death or other serious physical injury" or various types of knives, clubs and knuckles (Penal Law §§ 160.15 [2]; 10.00 [12]). When a BB gun is used to commit a robbery, the People can charge the defendant under this subdivision, but it is the People's burden to prove that the BB gun used by the defendant was loaded and operable, and thus "readily capable of producing death or serious injury" (Penal Law § 160.15 [2]).
First-degree robbery subdivision three requires the People to prove that the defendant "[u]ses or threatens the immediate use of a dangerous instrument," which is defined as anything that "under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death of other serious physical injury" (Penal Law §§ 160.15 [3]; 10.00 [13]). The People can also charge a defendant under this subdivision when a BB gun is used, if the People prove that the BB gun was used, or attempted to be used, in a way that is "readily capable of causing death or serious physical injury" (Penal Law § 160.15 [3]).
First-degree robbery subdivisions (2) and (3) work in tandem to cover a variety of circumstances that do not necessarily include firearms. Subdivision (2) reaches certain enumerated weapons (e.g., switchblades) and loaded weapons from which a shot readily capable of producing death or physical injury can be discharged—for example, a crossbow. Subdivision (3) reaches dangerous instruments that are used, or attempted to be used, in circumstances readily capable of causing death or physical injury—for example, a baseball bat or crowbar. As to a BB gun, for prosecution under subdivision (2), the People would have to prove that the gun was highly enough powered to readily cause death or serious physical injury, whereas under subdivision (3), the People would have to prove, for example, that a low-powered BB gun that was actually placed against someone's eye or temple (or even threatened to be used to beat someone severely), and was, in those circumstances, readily capable of causing death or serious physical injury. But under both subsections, the Legislature has specified that it is the People's burden to prove the aggravating factors.
In this case, the defendant was charged under first-degree robbery subdivision four—Penal Law § 160.15 (4). First-degree robbery subdivision four features language identical to the second-degree robbery statute—penalizing defendants who "display[ ] what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm"—except that subdivision four contains an affirmative defense (Penal Law §§ 160.15 [5]; 160.10 [2] [b]). If the People prove that the defendant displayed what appeared to be a firearm, "it is an affirmative defense that the [object displayed] was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged" (Penal Law § 160.15 [4]). If the defendant proves this affirmative defense by a preponderance of the evidence, the crime is reduced to robbery in the second degree.
"As in most statutes creating degrees, the more serious crime is created by the addition of one or more elements to the lesser offense" (People v Eboli, 34 NY2d 281, 287 [1974] [emphasis added]). Thus, the identical language in both degrees of the robbery statute is not redundant (except for the affirmative defense), but rather, evinces the intent of the legislature to penalize defendants who actually display a firearm during the course of committing a robbery differently and more severely than those who display a different object. The majority, by reading first-degree robbery subdivision four as detached from the rest of the robbery statute, fails to recognize that because of the overlap in second-degree robbery (Penal Law § 160.10 [2] [b]) and first-degree robbery subdivision four (Penal Law § 160.15 [4]), subdivision four must include an added element distinguishing it from second-degree robbery. In essence, subdivision four must be read to apply only to a common circumstance not present here: when the item displayed, which appeared to be a firearm, is not recovered or otherwise known. In that circumstance, subdivision four presumes that which appeared to be a firearm, was a firearm, and the burden properly rests on the defendant to prove that it was "not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged" (Penal Law § 160.15 [4]). When, instead, it is undisputed that the defendant used something that is not a firearm and the People charge robbery in the first degree under subdivision four, as is the case here, the conviction must be reduced to second-degree robbery.
Under the majority's construction of the robbery statute, the People have two options when someone commits a robbery in which no one is injured, using a BB gun, toy gun, or anything that looks like a firearm but turns out not to be, such as a toothbrush cloaked in a way to make it appear to be a gun (see People v Lockwood, 52 NY2d 790, 791 [1980] [finding reversible error when defendant, who displayed a toothbrush during a robbery, requested but was not given the affirmative defense under subdivision four]; People v Baskerville, 60 NY2d 374, 378 [1983] [defendant displayed a black object covered by a towel that appeared to be a firearm]). First, and historically, if the People contend the object was readily capable of causing death or injury, either inherently so or because of the way in which it was used or threatened, the People have the burden to prove so if they wish to secure a first-degree robbery conviction. If the People conclude that the death-or-injury requirement is not met, the defendant can be charged with second-degree robbery for displaying a BB gun, toy gun or toothbrush. Second, though, the new option granted by the majority to the People is to charge the BB gun, toy gun, or toothbrush wielder with first-degree robbery and eliminate the People's burden to prove the object is "readily capable of producing death or other serious physical injury" for a first-degree robbery conviction where the weapon used appeared to be, but conclusively was not, a firearm. The majority's construction shifts the People's burden under subdivision's (2) and (3) of the first-degree burglary statute onto the defendant, to prove that the item resembling a firearm was not readily capable of producing serious physical injury or death.[FN3]
[*4]In the case of a toothbrush, that's not much of a burden, but the ease or difficulty is not the point [FN4]. Under all other subdivisions of first-degree robbery, the Legislature clearly stated that to secure a conviction it is the People's burden to prove the object caused or was "readily capable of producing death or injury"—not the defendant's. Completely contrary to that clear statutory requirement, the majority now allows the People to shirk their burden under those subdivisions and secure a first-degree conviction by proving no more than what the Legislature denominated as second-degree robbery: use of what appears to be a firearm. In the process, the majority overturns decades of precedent in the Appellate Division to the contrary without acknowledgement or explanation [FN5]. Moreover, the majority provides no rationale as to why, when the defendant is charged under subdivision four, the burden of proving the BB gun's capabilities, or lack thereof, shifts to the defendant. Such a shift makes sense only when the object displayed is unknown. Otherwise, we allow an "unwarranted reduction in the People's burden of proof" that is "particularly objectionable because it authorizes convictions for first degree robbery on the basis of conduct that is at least one step removed from the type of behavior for which the Legislature intended to impose the highest punishment available within the robbery article" (People v Lopez, 73 NY2d 214, 225 [1989] [Titone, J., dissenting in part and concurring in part]). Because of the majority's misconstruction of the robbery statute, the People will never have reason to charge under second-degree robbery, and where something that appears to be a firearm but is not is actually recovered, the People will have also no reason to charge under subdivisions (2) and (3) of the first-degree robbery statute. The majority's reading impermissibly extends liability under the Section 160 of the Penal law, as the majority places non-deadly toys, BB guns, and toothbrushes on equal footing with firearms, when the existence of second-degree robbery alone reveals the Legislature's intent to treat those items differently—that is, as class C, instead of class B, felonies (see People v Gottlieb, 36 NY2d 629, 632 [1975] [penal responsibility "cannot be extended beyond the fair scope of the statutory mandate"]; see also People v Golb, 23 NY3d 455, 468 [2014] ["If two constructions of a criminal statute are plausible, the one more favorable to the defendant should be adopted in accordance with the rule of lenity" (alteration omitted)]).
The legislative history supports the conclusion that subdivision four applies when the actual item that appeared to be a firearm is not known. The primary intent of subdivision four's affirmative defense was to [*5]alleviate the prosecution from having to prove "that an object displayed during a robbery, which appears to be a firearm capable of causing death or serious injury, was in fact a loaded, operable gun when it was not fired at the scene or recovered afterwards" (Lopez, 73 NY2d at 219-220 [emphasis added]; see also Letter from NY St Temp Commn on Rev of Penal Law and Crim Code, Apr., 3, 1969, Bill Jacket, ch 1012 at 5-6 ["We consider these amendments to be a reasonable and equitable solution to a very serious law enforcement problem" that "if the burglar or robber is apprehended in the course of the commission of the crime, or immediately thereafter with a loaded gun in his possession, no particular difficulty is encountered in prosecution" but "if he is apprehended some time after the crime, it becomes almost impossible to prove that he was 'armed' when he committed the crime"]). Thus, subdivision four is meant to alleviate only the People's need to prove that which appeared to be a firearm is a firearm when the People cannot determine what the displayed object actually was—not when it is undisputed that the object displayed was a BB gun, toy or toothbrush.* * *

At bottom, in order for the statutory scheme to make sense, if it is known that the defendant used a BB gun, which is not a firearm, the People can proceed under robbery in the first or second degree, but if they elect first degree, it is the People who bear the burden to prove the BB gun used is readily capable of causing death or serious injury. In this case, the People recovered a BB gun from Mr. Smith's home, charged Mr. Smith with robbery in the first degree pursuant to Penal Law § 160.15 (4), and introduced the BB gun into evidence as the gun used in the robbery. Where, as here, it was uncontroverted that the weapon Mr. Smith displayed was a BB gun, the affirmative defense automatically applies. Mr. Smith's charge should have been reduced to second degree robbery.
Order affirmed. Opinion by Judge Troutman. Judges Rivera, Garcia and Cannataro concur.
Chief Judge Wilson dissents in an opinion, in which Judges Singas and Halligan concur.
Decided December 18, 2025

Footnotes

Footnote 1: The dissent considers the cases cited in this sentence to be irrelevant but does not and cannot take issue with the propositions for which we are citing them (dissenting op at 8 n 3). Conspicuously, the dissent does not dispute that BB guns are capable of producing serious physical injury such as blinding.

Footnote 2: Although the dissent is correct that Lopez focused on the "display" element of first- and second-degree robbery (dissenting op at 9 n 5), at least the well-reasoned dissent in Lopez parted with the majority on the interpretation of an actual element of the crime, rather than manufacturing, as the dissent does here, a nonexistent element in order to support its conclusion.

Footnote 1: Second-degree robbery under Penal Law § 160.10 (2) (b) is the only subdivision of second-degree robbery relevant to this opinion. As a result, and for ease, whenever I refer to second-degree robbery throughout the opinion, I am speaking in reference to Penal Law § 160.10 (2) (b).
Footnote 2: A firearm is defined as a weapon that "is designed to or may readily be converted to expel a projectile by action of explosive" (Penal Law § 265.00). It is well settled that a BB gun, which expels its projectile by compressed air or mechanical springs, is not a firearm (see e.g. People v Wilson, 283 AD2d 339 [3d Dept 2001]; People v DePaul, 101 AD3d 1735 [4th Dept 2012]).

Footnote 3: Bereft of any relevant authority, the majority piles irrelevant cases on top of each other in the hope that volume will prevail over substance. In People v Richard the court determined a BB gun was a deadly weapon without evaluating the particular BB gun (30 AD3d 750 [3d Dept 2006], lv denied 7 NY3d 869 [2006]), which contradicts the majority's assertion that determination of a BB gun's deadliness is a question of fact (majority op. at 4). United States v Shelton is a federal case, in which that court determined a BB gun was a "dangerous weapon", but under the federal definition a "dangerous weapon" includes objects that closely resemble dangerous weapons, even those than cannot cause serious injury (82 F4th 1294, 1295-1296 [8th Cir 2023]). People v Reyes (189 AD3d 454 [1st Dept 2020]) and People v Hirschhorn, (231 AD2d 591, 591 [2d Dept 1996]) have nothing to do with BB guns, but instead provide examples of what courts have found qualify as "serious physical injury." If the point the majority wishes to derive from these cases is that a BB gun can sometimes be a "dangerous instrument" as defined in the Penal Law, it can, as can a handkerchief (People v Cwikla, 46 NY2d 434, 442 [1979]). But the structure of the robbery statute requires the People bear the burden to meet that definition for BB guns and handkerchiefs alike.

Footnote 4: In the case of a BB gun, that burden may be particularly difficult for a defendant to meet. Unlike firearms, which law enforcement tests to determine operability and assist the People in their burden of proof, there does not appear to be law enforcement testing of BB guns. Even if there was, a defendant would have to move for a discretionary court order pursuant to CPL 245.30 (3) to subpoena the BB gun and have a third party also perform testing. This adds additional hurdles for the defendant, as CPL 245.30 (3) requires the defendant to show that the request is reasonable and that the defendant is unable to obtain substantially equivalent evidence without undue hardship.
Footnote 5: The majority's reliance on People v Lopez (73 NY2d 214 [1989]), completely misses the difference between that case and this, which difference highlights the majority's error. The question in both cases comprising Lopez was whether the defendants' acts constituted a "display" of what appeared to be a firearm. In the two cases in Lopez, there was no record evidence that the defendants did not actually possess a firearm—the defendants fled, were apprehended later, and may or may not have had loaded firearms when committing the robberies. The crucial difference here is that the People tried this case on the theory that Mr. Shaw had a BB gun, and prevailed on that theory. Lopez does not concern a situation in which the defendant displays what appears to be a firearm but is known to be a BB gun or toothbrush. In that circumstance, a conviction for first-degree robbery does not align with the statute.